Fischer, J.
*584 *908 {¶ 1} In this discretionary appeal, we address whether R.C. 3314.08 authorizes defendant-appellee, the Ohio Department of Education ("ODE"), to base funding of an Internet-based community school, or e-school, on the duration of student participation. We hold that it does, as the statute is unambiguous and allows ODE to seek that data in order to calculate funding.
I. Factual Background and Procedural Posture
{¶ 2} Plaintiff-appellant, the Electronic Classroom of Tomorrow ("ECOT"), is Ohio's largest e-school and has been in operation since 2000.
{¶ 3} Under R.C. 3314.08(C)(1), funding for community schools, which are commonly known as charter schools, is determined "on a full-time equivalency ['FTE'] basis for each student enrolled." R.C. 3314.08(H)(3) sets forth how FTE is measured:
The department shall determine each community school student's percentage of full-time equivalency based on the percentage of learning opportunities offered by the community school to that student, reported either as number of hours or number of days, is [sic] of the total learning opportunities offered by the community school to a student who attends for the school's entire school year. However, no internet- or computer-based community school shall be credited for any time a student spends participating in learning opportunities beyond ten hours within any period of twenty-four consecutive hours. Whether it reports hours or days of learning opportunities, each community school shall offer not less than *585 nine hundred twenty hours of learning opportunities during the school year.
A community school reports its data to ODE, and ODE then determines the amount of public funding the school will receive based on the figures that are reported.
{¶ 4} Under R.C. 3314.08(K), ODE is authorized to review a community school's data and to adjust a school's funding (by reducing or increasing future funding, as appropriate) based on the result of its *909 review. In an effort to make the reviews consistent throughout the state, ODE provides reviewers with a review manual, or handbook. ODE publishes the handbook on its website and frequently revises it.
{¶ 5} ODE typically conducts reviews on a five-year cycle for each community school, unless matters arise warranting a review sooner. ECOT's last review occurred in 2011. ECOT was therefore due for a regularly scheduled review in 2016.
{¶ 6} For the 2015-2016 academic year, ECOT reported more than 15,000 enrolled students and received more than $106 million in public funding from ODE. During the preliminary stage of its review, ODE requested that ECOT submit data to demonstrate the duration and frequency of students' participation (i.e., log-on and log-off times) in ECOT's online educational programs.
{¶ 7} In response to ODE's request, ECOT provided log-on/log-off records showing that, on average, its students spent approximately one hour a day logged on to ECOT's online educational platform. ODE continued to request data from ECOT showing the duration of a student's participation for the final FTE review. However, ECOT did not comply with ODE's request.
{¶ 8} Instead, on July 8, 2016, ECOT sought a permanent injunction and declaratory judgment in the Franklin County Court of Common Pleas seeking to bar ODE from requesting or considering data showing the duration of a student's participation during its review. The trial court ultimately denied ECOT's claims against ODE, and the Tenth District Court of Appeals affirmed the trial court's judgment.
{¶ 9} ECOT appealed. On September 13, 2017, we accepted review of ECOT's fourth proposition of law, which argues that ODE is barred by the language of R.C. 3314.08 from calculating funding based on a student's participation.
II. Analysis
{¶ 10} First, ECOT argues that the Tenth District erred when it held that R.C. 3314.08(H)(3) unambiguously "compels the conclusion that although enrollment is a necessary predicate to funding, the amount of funding per student is dependent *586 on a measure of student participation." 2017-Ohio-5607, 92 N.E.3d 1269 ¶ 25. ECOT agrees that the statute is unambiguous, but in its view, R.C. 3314.08 demonstrates the legislative intent that funding for community schools is based on enrollment, not on the duration of student participation.
A. Standard of review
{¶ 11} We review questions of statutory interpretation de novo. Ceccarelli v. Levin , 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8. When considering the meaning of a statute, our " 'paramount concern is the legislative intent' of its enactment." State ex rel. Steffen v. First Dist. Court of Appeals , 126 Ohio St.3d 405, 2010-Ohio-2430, 934 N.E.2d 906, ¶ 30, quoting State ex rel. Steele v. Morrissey , 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. Because a statute must be considered as a whole, "a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." State v. Wilson , 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997). When considering the four corners of an enactment, we "consider the statutory language in context, construing words and phrases in accordance with rules of grammar and common usage." State Farm Mut. Auto. Ins. Co. v. Grace , 123 Ohio St.3d 471, 2009-Ohio-5934, 918 N.E.2d 135, ¶ 25. Provided that "[t]he meaning of the statute is unambiguous and definite, it must be applied as written and *910 no further interpretation is necessary." State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn. , 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996).
B. R.C. 3314.08 is unambiguous
{¶ 12} "Community schools" are public schools that are "independent of any school district." R.C. 3314.01(B). R.C. Chapter 3314 governs community schools, including setting forth a formula for calculating public funding for those schools. R.C. 3314.08(C)(1) first states that ODE is obligated to pay a community school "on a full-time equivalency basis, for each student enrolled."
{¶ 13} R.C. 3314.08(H) then states that ODE "shall adjust the amounts subtracted and paid under division (C) of this section to reflect any enrollment of students in community schools for less than the equivalent of a full school year ." (Emphasis added.) A student is "enrolled" on the later of two dates: (1) on which "the school both has received documentation of the student's enrollment from a parent and the student has commenced participation in learning opportunities " or (2) 30 days before a student is entered into a management system that is established according to statute. (Emphasis added.) R.C. 3314.08(H)(2). The term "learning opportunities" must be defined in the sponsor contract, which must describe both classroom-based and non-classroom-based learning opportunities *587 and must "be in compliance with criteria and documentation requirements for student participation " established by ODE. (Emphasis added.) Id.
{¶ 14} But it is in R.C. 3314.08(H)(3) that FTE is explained; it is the percentage calculated by dividing the learning opportunities offered by the community school to one student by the total learning opportunities offered by the community school to a student who attends the school for an entire year. The calculation may be made based on either a number of hours or a number of days. However, an e-school cannot be credited for any time a student spends participating in learning opportunities beyond 10 hours within a 24-consecutive-hour period. By stating that the maximum daily credit for each student is ten hours, it is apparent that the legislature intended that an e-school will be credited for a student's participation for less than ten hours in a day. This calculation can be made only by referring to records that contain evidence of the duration of a student's participation in learning opportunities.
{¶ 15} As ODE notes, the plain meaning of R.C. 3314.08 is confirmed by the language used in R.C. 3314.27. That statute provides:
No student enrolled in an internet- or computer-based community school may participate in more than ten hours of learning opportunities in any period of twenty-four consecutive hours. Any time such a student participates in learning opportunities beyond the limit prescribed in this section shall not count toward the annual minimum number of hours required to be provided to that student as prescribed in division (A)(11)(a) of section 3314.03 of the Revised Code.
Each internet- or computer-based community school shall keep an accurate record of each individual student's participation in learning opportunities each day. The record shall be kept in such a manner that the information contained within it easily can be submitted to the department of education, upon request *911 by the department or the auditor of state.
{¶ 16} Because the language of R.C. 3314.08 is unambiguous, we need not look beyond its four corners for meaning. The legislature prescribed that student participation is the relevant measure for calculating the public funding of e-schools.
C. ECOT's arguments are unavailing
{¶ 17} To support its contrary interpretation of R.C. 3314.08, ECOT makes a variety of arguments. We respectfully reject each of them as not persuasive.
*588 1. R.C. 3314.08 does not articulate an enrollment-based funding methodology
{¶ 18} First, ECOT argues that R.C. 3314.08(C)(1), which states that payment is made "for each student enrolled in a community school established under this chapter," requires ODE to fund a community school based on the number of students enrolled. However, R.C. 3314.08(C)(1) is only the starting point for calculating payments to community schools. ECOT's argument fails to acknowledge other language in that statute: payment is based "on a full-time equivalency basis, for each student enrolled in a community school." Thus, ODE is required to calculate FTE for each student enrolled in a community school. For these reasons, ECOT's reliance on R.C. 3314.08(C) is misplaced.
{¶ 19} ECOT also points to the legislature's use of the words "enrolled" and "enrollment" in R.C. 3314.08(B) to argue that enrollment is the relevant factor in calculating payments to community schools, but that division of the statute merely requires the state board of education to adopt rules for local boards of education and the governing authority of each community school to annually report the number of students enrolled; it does not address funding. While ECOT spends considerable time discussing other divisions of the community-school statute, it is R.C. 3314.08(H) that requires that ODE adjust funding for community schools by calculating FTE for each student.
{¶ 20} ECOT also argues that R.C. 3314.08(H)(2) plainly provides that ODE's obligation to fund, and to adjust funding, is based on the commencement and termination of a student's enrollment. But the termination of enrollment is merely one reason for ODE to adjust payments; ODE may adjust a school's funding for other reasons. Enrollment creates the potential for funding, but the amount of funding and any adjustments to it are to be calculated based on a student's participation on a "full-time equivalency basis," R.C. 3314.08(C)(1). In order to calculate funding, ODE is authorized to consider evidence of the duration of a student's participation.
{¶ 21} Second, ECOT contends that the language in R.C. 3314.08(H)(2) requiring a sponsor's contract to "be in compliance with criteria and documentation requirements for student participation" established by the ODE does not mean that a duration- or participation-based standard is to be used to determine funding. ECOT argues that ODE never established standards based on the duration of a student's participation in learning opportunities or even established standards in the enrollment context. ECOT also argues that ODE failed to enact administrative rules under R.C. Chapter 119 setting forth minimum standards for participation. These arguments were rejected by the trial and appellate courts, and we did not accept review of ECOT's proposition of law addressing these issues. Accordingly, they are not properly before us, and we will not address them.
*589 *912 {¶ 22} Third, ECOT argues that R.C. 3314.08(H)(3) plainly "sets forth an enrollment-based equation" for calculating FTE. ECOT claims that the phrase "learning opportunities offered by the community school" indicates that the FTE formula is based on the opportunities offered or made available to a student, not on the hours a student participates in the learning opportunities offered by the school. But R.C. 3314.08(H)(3) refers to "learning opportunities offered by the community school to a student who attends for the school's entire school year." The statute explicitly contemplates both that an e-school offer the learning opportunities and that a student attend and participate in those opportunities. The term "offer" is only one word of the operable language of the statute, which when read in full, does not indicate that the legislature intended for e-schools to be funded merely for offering learning opportunities. Accordingly, this argument fails to support ECOT's proposed interpretation of R.C. 3314.08(H)(3).
2. ECOT's interpretation renders null other portions of R.C. 3314.08
{¶ 23} ECOT asserts that on its face, the statutory formula is designed to calculate the percentage of funding to which community schools are entitled for a student who is enrolled for part of a year. ECOT claims that the calculation hinges on the school's calendar, during which at least 920 hours of learning opportunities must be offered. But this interpretation fails to give effect to R.C. 3314.08(H)(3), which limits the credit given for time a student participates in learning opportunities to ten hours a day. ECOT's interpretation thus would render portions of the statute superfluous. See Stolz v. J & B Steel Erectors, Inc. , 146 Ohio St.3d 281, 2016-Ohio-1567, 55 N.E.3d 1082, ¶ 9 ("When a court interprets the meaning of a statute, * * * the court must give effect to all of the statute's words"). We agree with ODE that if the length of a student's enrollment were the only measure of FTE, that student's daily participation hours would not be relevant to whether a school could claim full FTE credit, and thus obtain full funding, for that student. There would be no need for a statutory mechanism to prevent overclaiming-an e-school would not be able to overclaim FTE funding even if it violated the statutory limit to ten hours a day.
3. The 105-hour rule does not support ECOT's interpretation
{¶ 24} ECOT also relies on R.C. 3314.03(A)(6), which the parties describe as the "105-hour rule," to support its enrollment-based-funding interpretation of R.C. 3314.08(H). R.C. 3314.03 provides:
(A) Each contract entered into between a sponsor and the governing authority of a community school shall specify * * *
* * *
*590 (6) * * *
(b) A requirement that the governing authority adopt an attendance policy that includes a procedure for automatically withdrawing a student from the school if the student without a legitimate excuse fails to participate in one hundred five consecutive hours of the learning opportunities offered to the student.
Another version of the 105-hour rule appears at the end of R.C. 3314.08(H)(2), which provides that a student who completed the prior school year in an internet-or computer-based community school is considered enrolled in the same school in the following school year unless the student, without a legitimate reason, fails to *913 participate in the first 105 consecutive hours of learning opportunities offered in the new school year.
{¶ 25} ECOT argues that under ODE's interpretation that an e-school would not receive funding for any period in which a student was enrolled but not participating, the requirement that a student is deemed withdrawn if he fails to participate in 105 consecutive hours of learning opportunities is superfluous. But R.C. 3314.03 and 3314.08(H)(2)(c) address only enrollment, which is the first step necessary to obtain funding. These statutes define the period for which FTE is to be calculated; they do not explain how FTE is to be calculated.
4. The meaning of R.C. 3314.08 is not dependent on ODE's past practice
{¶ 26} ECOT also argues that in the past, ODE did not require evidence of the duration of student participation in calculating an e-school's funding. ECOT maintains that prior to 2016, ODE based funding on annual enrollment rather than on student participation and instructed the Ohio Auditor of State's office to conduct its audits accordingly. ECOT contends that ODE should be held to its past practice.
{¶ 27} ECOT's contention is unconvincing. The trial court specifically found that "since at least 2010, the FTE review manuals have supported ODE's ability to request and review durational data in connection with FTE funding reviews." Even though ODE did not request data documenting student participation in the past, the statute , R.C. 3314.08, allows ODE to use this data to calculate a community school's funding.
{¶ 28} ODE readily admits that it did not realize until 2013 that there was a lack of evidence of student participation. Upon conducting reviews at several community schools, ODE began to question the schools' methods of measuring student participation. From that point forward, ODE requested data measuring the duration of student participation from all community schools, including e-schools, and imposed funding consequences when a community school failed to *591 prove student participation. ECOT has not demonstrated that ODE's requests are not supported by the statutory language.
III. Conclusion
{¶ 29} We determine that R.C. 3314.08 is unambiguous and authorizes ODE to require an e-school to provide data of the duration of a student's participation to substantiate that school's funding. Accordingly, we affirm the judgment of the Tenth District Court of Appeals.
Judgment affirmed.
O'Connor, C.J., and Gwin and DeGenaro, JJ., concur.
O'Donnell, J., dissents, with an opinion.
Kennedy, J., dissents, with an opinion.
DeWine, J., not participating.
W. Scott Gwin, J., of the Fifth District Court of Appeals, sitting for French, J.
O'Donnell, J., dissenting.
{¶ 30} Respectfully, I dissent.
{¶ 31} R.C. 3314.08 does not authorize the Ohio Department of Education ("ODE") to base funding of an Internet-based community school on the duration of student participation in learning opportunities; rather, it requires that funding be based on student enrollment.
{¶ 32} The Electronic Classroom of Tomorrow ("ECOT") is an e-school that began operations in 2000 and has been funded by ODE pursuant to a funding agreement, which took effect in 2002 and set forth the documentation that ECOT
*914 needed to provide to ODE to secure funding. That agreement did not include durational data, and ECOT received funding from ODE following ODE audits in 2002, 2003, 2005, 2006, and 2011 based exclusively on student enrollment.
{¶ 33} In 2016, without any statutory or administrative rule changes , ODE for the first time announced its intent to base ECOT funding on the duration of student participation in learning opportunities and requested that ECOT provide durational records in order to obtain funding. As a result, ECOT filed this action seeking specific performance of its funding agreement and an injunction to preclude ODE from violating R.C. 3314.08(H)(3) and using durational data during its full-time-equivalency ("FTE") review. Following a hearing, the trial court denied relief, concluding that R.C. 3314.08(H)(3) conditions ECOT funding on student participation. It also determined that the funding agreement applied only to the ODE 2002 and 2003 FTE reviews and therefore, ODE could consider durational data in its 2015-2016 FTE review of ECOT. The court of appeals *592 affirmed the judgment of the trial court and permitted ODE to require durational data from ECOT as a basis for its funding, agreeing with the trial court that R.C. 3314.08(H)(3) authorizes ODE to consider durational data and that the funding agreement applied only to the 2002-2003 funding year.
{¶ 34} The proposition of law in this case, however, does not pertain to whether ECOT funding arises from its agreement with ODE. Here, we are concerned with whether R.C. 3314.08(H)(3) authorizes durational funding because the proposition of law before this court states: "ODE is barred, by the plain and unambiguous language of R.C. § 3314.08, from imposing the challenged durational criterion." Plainly, the statute does not authorize the use of durational data as a basis for funding ECOT. Rather, the statute unambiguously uses the percentage of learning opportunities offered to a student as the basis for funding.
Law and Analysis
{¶ 35} R.C. 3314.01(B) states that a community school "is a public school, independent of any school district, and is part of the state's program of education." R.C. 3314.015(G) prohibits ODE from imposing requirements on community schools "that are not permitted by law or duly adopted rules" in carrying out its duties pursuant to R.C. Chapter 3314.
{¶ 36} Importantly, for purposes of the proposition of law presented in this case, R.C. 3314.08(C)(1) mandates that ODE provide funding for community schools "on a full-time equivalency basis, for each student enrolled ." (Emphasis added.) Further, R.C. 3314.08(H) directs that ODE "shall adjust the amounts subtracted and paid under division (C) of this section to reflect any enrollment of students in community schools for less than the equivalent of a full school year." (Emphasis added.)
{¶ 37} R.C. 3314.08(H)(3) provides the means by which FTE is to be calculated:
The department shall determine each community school student's percentage of full-time equivalency based on the percentage of learning opportunities offered by the community school to that student , reported either as number of hours or number of days, is [sic] of the total learning opportunities offered by the community school to a student who attends for the school's entire school year . However, no internet- or computer-based community school shall be credited for any time a student spends participating in learning opportunities beyond ten *915 hours within any period of twenty-four consecutive hours. Whether it reports hours or days of learning opportunities, each community school shall offer not less than nine hundred twenty hours of learning opportunities during the school year.
*593 (Emphasis added.)
{¶ 38} The majority concludes that R.C. 3314.08 unambiguously authorizes ODE to fund an e-school based on the duration of student participation. Majority opinion at ¶ 29. In its opinion, the majority reasons:
By stating that the maximum daily credit for each student is ten hours, it is apparent that the legislature intended that an e-school will be credited for a student's participation for less than ten hours in a day. This calculation can be made only by referring to records that contain evidence of the duration of a student's participation in learning opportunities.
Id. at ¶ 14.
{¶ 39} The majority fails to give effect to the plain language of R.C. 3314.08(H)(3), which provides that ODE must calculate a student's percentage of FTE based on the percentage of learning opportunities offered to that student-which is dependent on the length of that student's enrollment-of the total learning opportunities offered to students who attend for the entire school year. If the legislature had intended to condition funding on the duration of a student's participation in the learning opportunities offered by a community school, it could have expressed that intent by using a phrase such as "based on the percentage of learning opportunities participated in by that student," but it did not do so. Rather, it stated that funding is "based on the percentage of learning opportunities offered by the community school to that student." R.C. 3314.08(H)(3).
{¶ 40} The majority confuses the reference to a ten hour maximum daily credit in R.C. 3314.08(H)(3) with funding based on the duration of student participation. E-schools, unlike traditional brick and mortar schools, are able to offer learning opportunities to students 24 hours a day, seven days a week. Therefore, an e-school could theoretically offer an entire school year consisting of 920 hours of learning opportunities to a student who enrolled for only 39 calendar days. To prevent such a result, the General Assembly has precluded an e-school that reports its learning opportunities offered as a number of hours from obtaining credit for offering more than 10 hours of learning opportunities in a period of 24 consecutive hours, even if a particular student actually participates in more than 10 hours of learning opportunities during such period. See R.C. 3314.08(H)(3). Notably, however, nothing in the ten hour rule expresses a legislative intent to authorize ODE to condition funding for e-schools based on the duration of student participation in learning opportunities. Although no such language is in the statute, the majority finds such a funding condition in that ten hour rule and *594 thereby erroneously allows ODE to impose a requirement on a community school that is not based on the plain language of the statute.
{¶ 41} The majority's reliance on R.C. 3314.27, which also has a ten hour rule, is misplaced because that statute contains no funding provisions whatsoever . Rather, it merely prohibits students enrolled in e-schools from participating in more than 10 hours of learning opportunities in any 24 hour period, states that participation beyond *916 this limit "shall not count toward the annual minimum number of hours required to be provided to that student as prescribed in division (A)(11)(a) of section R.C. 3314.03 of the Revised Code" (which governs contracts between the governing authority of a community school and its sponsor), and requires that e-schools track individual student participation in learning opportunities and keep that record "in such a manner that the information contained within it easily can be submitted to" ODE.
{¶ 42} The majority's conclusion that R.C. 3314.08 permits ODE to require an e-school to provide data regarding the duration of a student's participation in order to calculate its funding is contrary to the statute because the statute plainly bases funding on the learning opportunities offered to students during their enrollment and does not refer to the duration of student participation. It is a commonly accepted precept of statutory construction that courts cannot add words to a statute when construing it to determine legislative intent. In re Adoption of P.L.H. , 151 Ohio St.3d 554, 2017-Ohio-5824, 91 N.E.3d 698, ¶ 27 ; State ex rel. Russo v. McDonnell , 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 50.
{¶ 43} To condition funding based on participation instead of enrollment contradicts the plain language of the statute and thwarts legislative intent. Moreover, such a condition places a burden on community schools different from that placed on traditional brick and mortar schools, for which the General Assembly has designated three separate days in order to calculate student enrollment and then bases school funding on the number of students enrolled on those three days without regard to student attendance for the rest of the year. See R.C. 3317.01, 3317.03, and 3317.036.
{¶ 44} Today's decision demands that the General Assembly clarify its intent with regard to the question of funding for online community schools. More than 10,000 students across our state have been affected by today's singular decision, and thousands more could be affected by the precedent set by this decision. If in fact it is the intent of the General Assembly to fund online community schools based on learning opportunities as R.C. 3314.08 specifies, the General Assembly needs to clarify that intent to eliminate confusion arising from today's decision and the ODE's insistence on using durational data to fund online community schools.
*595 {¶ 45} I would reverse the judgment of the court of appeals and remand the matter to the trial court for further proceedings.